Edward C. GENTRY, t/a Quik Pick
Grocery, Plaintiff,

v.

C & D OIL COMPANY, Miller Oil
Company, Inc., and Trico Oil
Company, Inc., Defendants.

Civ. No. 83–3019.

United States District Court,
W.D. Arkansas,
Harrison Division.

April 24, 1984.

Walter R. Niblock, Fayetteville, Ark., Kenneth Smith, Yellville, Ark., Arnold Levin and Howard J. Sedran, Levin & Fishbein, David S. Shrager, Shrager, McDaid & Loftus, Philadelphia, Pa., Howard A. Specter, Specter & Buchwach, Pittsburgh, Pa., for plaintiff.

H. David Blair, Batesville, Ark., and Donn G. Kessler, of Jennings, Strouss & Salmon, Phoenix, Ariz., for C & D Oil Co.

Timothy O. Dudley, Friday, Eldredge & Clark, Little Rock, Ark., for Trico Oil Co.

Gene C. Campbell, Walker & Campbell Law Firm, Harrison, Ark., for Miller Oil Co., Inc.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. Introduction

Plaintiff, Edward C. Gentry, t/a Quick Pick Grocery, instituted this action by way of "Class Action Complaint" on behalf of all persons who have purchased or obtained gasoline products from the defendants and have resold those products to the public. Jurisdiction is invoked pursuant to sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26, as amended), and section 1 of the Sherman Act (15 U.S.C. § 1).

The plaintiff alleges that the three corporate defendants unlawfully engaged in a continuing combination and conspiracy to fix the price and the terms and conditions of the sale and distribution of gasoline in violation of section 1 of the Sherman Act, and that the price fixing resulting from the conspiracy caused damage to the plaintiff's

business and the businesses of the members of the class which the plaintiff seeks to represent. The plaintiff seeks treble damages pursuant to section 4 of the Clayton Act.

The plaintiff seeks to represent a class of direct purchasers consisting of all service stations located in the Arkansas counties of Baxter, Marion, Boone, Searcy, Fulton, Izard and Stone, and in adjacent Missouri counties, which resell to the public gasoline or diesel fuel purchased from the defendants or one of the co-conspirators during the period from January 1, 1977, to August 31, 1980. The proposed class does not include governmental or public entities or the defendants or affiliates of the defendants.

The plaintiff began operating his Quik Pick Service Station in February, 1979. The defendant Trico owned the pumps and tanks located on the plaintiff's service station premises and supplied the gasoline for them. The plaintiff maintained liability insurance on the premises which included coverage for injuries associated with the tanks and pumps.

The nature of the business relationship between the plaintiff and defendant Trico is difficult to ascertain. The defendant asserts that it consisted of a consignment relation with Trico supplying the gasoline, setting both the retail and wholesale price and splitting the profits equally with the plaintiff. The plaintiff admits that the defendant Trico supplied the gasoline on a weekly basis and set both the wholesale cost and retail price for the gasoline and was paid after the sale of the gasoline to the public. However, the plaintiff does not admit that the relationship amounted to a 50–50 split of the profit. According to the plaintiff, the defendant was paid a wholesale price for his gasoline and plaintiff's profits were determined by the difference between that wholesale cost and the price at which the gasoline was sold to the public. The plaintiff was responsible for collecting the amount due for gasoline sold to the public and cash receipts were deposited to the plaintiff's own account.

## II. Class Actions Generally

Unquestionably, a plaintiff seeking certification of a class has the burden of establishing that class action treatment is appropriate, with regard to the mandatory requirements of Rule 23. *See Smith v. Merchants & Farmers Bank of West Helena,* 574 F.2d 982 (8th Cir.1978). These requirements are: (1) that the class be so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of those of the class; and (4) that the representative parties will fairly and adequately protect the interest of the class. *See* Rule 23, Fed.R.Civ.P.

Additionally, the court must find one of the following: (1) that non-certification of the class would create a risk of inconsistent adjudications with respect to individual members, which would establish incompatible standards of conduct for the opposing party; or that non-certification would lead to individual adjudications which are practically dispositive of the other members' claims or which will impair their ability to protect their interests; or (2) that the opposing party has acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief to the whole class appropriate; or (3) questions of law or fact common to the class members predominate over the individual members' questions, and that a class action is superior to other methods for fair and efficient adjudication, considering *inter alia:* (a) the interest of members of the class in having individual control; (b) the extent and nature of related litigation already begun; (c) the desirability of concentrating the litigation in the particular forum; and (d) the likely difficulties encountered in managing the class action.

The specific requirements of class certification must now be examined in turn, in order to determine the nature, existence and extent of the proposed class and the propriety of certification.

### III. Numerosity

■ Rule 23(a)(1) provides that a class action may be maintained only if the class is so numerous that joinder of all members is impracticable. An arbitrary numerical limit should not be adopted, but rather, whether joinder is impracticable is the key. *See Chmieleski v. City Products Corp.*, 71 F.R.D. 118 (W.D.Mo.1976); *Wright v. White Hall School Dist.*, 92 F.R.D. 80 (E.D.Ark.1981). Impracticable does not mean impossible. The representative need only show that it is extremely difficult or inconvenient to join all the members of the class. It is not necessary that the plaintiff show the exact number of potential members in order to satisfy this requirement. However, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement.

■ The plaintiff has listed 81 service stations which purchased gasoline from the defendants and resold that gasoline to the public. These potential class members are located throughout a number of counties in both Arkansas and Missouri. The court finds that, because of their number and their dispersed locations, joinder of these parties would be impracticable. Thus the numerosity requirement is satisfied.

### IV. Questions of Law or Fact Common to the Class

■ Rule 23(a)(2) requires that "questions of law or fact common to the class" be present in order to maintain a class action. This provision does not require that all the questions of law and fact raised by the dispute be common. Factual differences are not fatal if common questions of law exist. *See Like v. Carter*, 448 F.2d 798 (8th Cir.1971). The questions of law are clearly common among the members of the putative class in this case. The questions of law arising under an anti-trust action are common to all class members and satisfy the requirement of commonality, even though there may be some factual differences which relate to the amount of damage incurred by each member.

### V. Claims and Defenses of the Representative Are Typical of Those of the Class

■ The third prerequisite in Rule 23(a) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The nature of the business relationship between the plaintiff and the defendant may be distinguishable from the relationship of some of the potential class members and the defendant. However, this does not render the plaintiff's case atypical because the nature of the relationship involved relates more to damages than to the anti-trust claim asserted by the plaintiff. The issues involved in the anti-trust claim asserted by the plaintiff are the same as the anti-trust issues relative to the potential members of the class.

Any defenses to the merits of the claim will also be identical whether they are asserted against the plaintiff or against the potential members of the class. The distinguishable business agreements between the various potential class members and the defendants relate to the amount of damage suffered by the potential members as a result of the alleged price fixing and not to the merits of the anti-trust claim.

If the business agreements vary significantly a bifurcated trial may be appropriate to determine liability by one proceeding and the amounts of resulting individual damage in other proceedings.

### VI. Adequacy of Representation

■ The elements of this requirement are: (1) the representative's counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. *See Leach v. Standard Register Co.*, 94

F.R.D. 621 (W.D.Ark.1982), *citing Morgan v. Laborers*, 81 F.R.D. 669 (N.D.Cal.1979).

The plaintiff has selected highly qualified and experienced counsel who are clearly able to conduct the litigation. The defendants assert that the plaintiff is not an adequate representative because there are so many attorneys involved and the plaintiff has not met with all of them. The court finds this argument unpersuasive.

■ The defendants also assert that the plaintiff's case involves interests which conflict with the interests of the class. The defendants note that plaintiff's claim is different from the claims of the class because of the peculiar business relationship between the plaintiff and defendant Trico. Additionally, the defendants point out that the plaintiff is no longer a dealer, but that other members of the class may still be doing business with the defendants and a large judgment against the defendants may not be in the best interests of those members still dealing with the defendants. The defendants also assert that the plaintiff is an inadequate representative because he entered the market in 1979 while some of the potential members of the class entered the market in 1977. It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to, or in conflict with, the objectives of those he purports to represent. Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. 7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1768; *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir.1944), *cert. denied*, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620.

■ The test of adequate representation by a plaintiff has been stated to be whether the representative has a sufficient interest in, and nexus with, the class to ensure vigorous prosecution of the action. Despite the facts asserted by the defendants as indicia of inadequacy, a sufficient interest in, and nexus with, the class still exists. The court in *In re South Central States Bakery Products*, 86 F.R.D. 407 (M.D.La.

1980), addressed facts similar to some of the facts of this case. In the *Bakery Products* case, as in this one, the plaintiff's claim did not extend throughout the entire alleged conspiracy. In response to a defense asserted on that basis, the court, at p. 419, remarked as follows:

The fact that [the plaintiff] is attempting to represent a class with claims dating back to the beginning of the alleged conspiracy beginning in 1971, although he first purchased wholesale bakery goods in 1973, does not render him an inadequate representative. Typical and adequate class representation does not necessarily require that the representatives have made purchases throughout the alleged period of conspiracy .... Although the plaintiffs' claim for damages may not extend throughout the entire period, the Court is confident that plaintiffs will fairly and adequately attempt to present evidence of violation and impact throughout the period [of the alleged conspiracy]. *Citing In Re Independent Gasoline Anti-trust Litigation, supra*, 79 F.R.D. [552] at 557–58.

This court, like the court in *Bakery Products*, believes that although the plaintiff's claim does not extend throughout the entire alleged conspiracy, the plaintiff will be an adequate representative and will vigorously prosecute the action. Nor does the fact that the plaintiff is no longer doing business with the defendants diminish the court's confidence in the adequacy of the plaintiff as a representative.

As mentioned before, the distinguishable business agreement between the plaintiff and the defendants relates to damages more than to the propriety of class certification. Thus the fact that plaintiff's agreement may have been different from the agreements utilized by other potential class members does not render the plaintiff inadequate as a representative. These asserted inadequacies do not go to the very subject matter of the litigation.

The adequate representative requirement also requires that the representative dis-

play some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. The representative need not have, and often in an anti-trust action will not have, personal knowledge of the facts needed to make out a prima facie case. *Axelrod v. Saks and Co.*, 77 F.R.D. 441, 445 (E.D.Pa. 1978); *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 174–75 (E.D.Pa.1979); *Lewis v. Curtis*, 671 F.2d 779 (3rd Cir.1982); *Peil v. Speiser*, 97 F.R.D. 657 (E.D.Pa.1983); *but see Greenspan v. Brassler*, 78 F.R.D. 130, 133 (S.D.N.Y.1978); and *White v. Ensearch Corp.*, 78 F.R.D. 547 (N.D.Tex.1978).

■■■ The plaintiff in this action was unable to explain parts of the complaint and did not possess personal knowledge which would support certain parts of the complaint, but the plaintiff understands the essence of the position of representative, the nature of the anti-trust action, and is aware of the facts giving rise to the lawsuit. The plaintiff personally authorized the initiation of the action and acknowledged his responsibility for the costs of litigation if the suit is not successful. Additionally, the plaintiff has actively pursued this claim thereby showing a personal as well as a financial interest in the action.

The defendants bear the burden of proving that the plaintiff does not meet the requirements of an adequate representative. That burden is a heavy one, especially in anti-trust actions. Only minimal characteristics are required for the plaintiff to be an adequate representative and, as the depositions and brief submitted in this case show, the plaintiff is clearly an adequate representative of the putative class he purports to represent.

## VII. The Requirements of Rule 23(b)

■■■ In addition to the prerequisites listed in Rule 23(a), the court must find that questions of law or fact common to the class members predominate over the individual members' questions, and that a class action is superior to other methods for fair and efficient adjudication, considering *inter alia:* (a) the interest of members of the class in having individual control; (b) the extent and nature of related litigation already begun; (c) the desirability of concentrating the litigation in the particular forum; and (d) the likely difficulties encountered in managing the class action.

Many courts have held that in anti-trust cases alleging horizontal price fixing, the questions of law or fact common to the members of the class predominate over questions pertaining only to individual members. This is especially true when fungible goods are sold. The predominant questions are (1) whether a conspiracy existed, and (2) whether that conspiracy caused damage or had an impact on the class.[1] The varying business relationships between the defendants and particular class members relate more to the amount of damages and not to the existence of damage to the class. In price fixing cases the issue of impact or damage generally easily follows proof of a conspiracy. Proof of these two elements establishes liability and leaves remaining only the degree of damage suffered by each party. Therefore, the common questions of conspiracy and damage are predominant.

### Conclusion

"The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinders as parties in conformity to the usual rules of procedure is impracticable." *See Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 118, 85 L.Ed. 2 (1940). "The importance and significance of the class action cannot be overstated, and every member of society has benefited from its use." *See Leach v. Standard Register Co., supra.* The class action has provided an efficient means for groups of persons with a common claim such as price fixing or discrimination to litigate their claims.

This case involves just such a situation. The plaintiff alleges that the defendants have caused damage to their consumers by

---

**1.** See 7A Wright & Miller, *Federal Practice and*     *Procedure: Civil* § 1781 n. 99, for a list of cases.

conspiring to engage in, and engaging in, price fixing. The plaintiff has satisfied the mandatory prerequisites to class certification as listed in Rule 23. The class potentially consists of 81 members all seeking to prove that the defendants violated the Sherman and Clayton Acts and other than the extent of damage suffered by each member, the claims of the representative, as well as the defenses relevant to the representative, are typical of those of the entire class. It is clear that Mr. Gentry and his counsel will fairly and adequately represent the interest of the class. Additionally, the questions of law or fact common to the class members predominate over the individual members' questions. Considering all of the facts of the case, a class action is superior to other methods for fair and efficient adjudication of this claim.

This court specifically holds that Edward C. Gentry, t/a Quik Pick Grocery, has satisfied the requirements of Rule 23 and is entitled, as representative, to bring this action as a class action.

A separate order in accordance with this memorandum opinion will be concurrently entered.