UNION NATIONAL BANK, Little Rock, AR; and
Financial Guaranty Insurance Company *v.* Katherine
BARNHART, for Herself and all Others Similarly Situated

90-291                                    823 S.W.2d 878

Supreme Court of Arkansas
Opinion delivered February 3, 1992

*Cravath, Swaine & Moore*, by: *Robert S. Rifkind* and *Brian S. Fraser*, for appellant Financial Guaranty Insurance Company.

*Friday, Eldredge & Clark*, by: *Larry W. Burks, Elizabeth J. Robben*, and *Jeffrey H. Moore*, for appellants Union National Bank and Financial Guaranty Insurance Company.

*E. Kent Hirsch, P.A.*, by: *E. Kent Hirsch*; and *Pearson, Evans & Chadwick*, by: *Marshall Dale Evans*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal involves class certification. The appellants, Union National Bank (Union Bank) and Financial Guaranty Insurance Company (Financial Guaranty), oppose the Washington County Chancery Court's certification of a class consisting of "the taxpayers and sanitation ratepayers of the City of Fayetteville, Arkansas." In addition, the appellants contest the form and content of the notice sent to the class. We affirm.

In December 1985, the Northwest Arkansas Resource Recovery Authority (Authority) issued revenue bonds to finance construction of an incinerator facility to dispose of the solid waste of the cities of Fayetteville and West Fork, as well as Washington County. The bonds were later remarketed to the public and, at that time, Fayetteville entered into a contract with the Authority in which it agreed to unconditionally guarantee the debts of the Authority, which included debt service on the bonds. Union Bank is the trustee for the Authority's bonds and Financial Guaranty is the insurer of the bonds.

The incinerator project was subsequently terminated for lack of a location and cost overruns by a non-binding referendum

vote of the Fayetteville electorate.

On August 15, 1989, Fayetteville city directors passed Ordinance 3444, which raised sanitation rates for the purpose of paying the Authority's debts. Shortly thereafter, suit was filed on behalf of the taxpayers and sanitation ratepayers of Fayetteville alleging the contract between the city and the Authority constituted an "illegal exaction" in violation of Ark. Const. art. 16, § 13. The plaintiffs requested that the agreement be declared null and void, that the rates exacted under Ordinance 3444 be refunded, and that the city be permanently enjoined from collecting any monies under the ordinance.

Following a lengthy bout of disagreement over a suitable representative for the class action, appellee Katherine Barnhart was certified as class representative, in accordance with ARCP Rule 23, in an order issued August 20, 1990. On September 10, 1990, the chancellor ordered notice by publication, in two Washington County newspapers, to the absent class members.

Union Bank and Financial Guaranty now appeal, basing their arguments for reversal on the requirements of Rule 23. They contend 1) Ms. Barnhart's representation of the class is not fair to all parties; 2) Ms. Barnhart is not an adequate representative of the class, but a mere instrumentality of counsel; 3) Ms. Barnhart is unqualified to serve as class representative; and 4) the notice prescribed by the chancery court is inadequate. None of these arguments have merit.

Initially, we note the appellees argue that since Fayetteville's contract is being challenged as an illegal exaction under Art. 16 § 13, a provision we have held to be self-executing, the taxpayers' rights to bring such a suit cannot be limited by the requirements of Rule 23. The appellees' complaint, however, was brought as a Rule 23 class action suit, and the trial court consistently treated it as such. Since this issue was not developed at the trial level, we decline to address it.

## I.  FAIR AND ADEQUATE REPRESENTATION

Because they are interrelated, points one and two of the appellants' argument will be combined for purposes of our discussion.

We agree with appellants' initial assertion that, in class action suits, "the greatest care is required to insure fairness both to the absent members of the class and to the defendants." We disagree, however, with their contention that this basic principle was not observed here.

The appellants first focus their objections on the process by which Ms. Barnhart assumed her role as class representative. It is true that the litigation concerning the incinerator project is marked by a long history, involving a number of different plaintiffs. Two successive actions were initially filed by Mr. Gordon Cummings, currently one of Ms. Barnhart's attorneys, which were later voluntarily dismissed. The present class action was first instituted by Mr. Joe Robson, who was later disqualified due to his position on the Washington County Quorum Court. Disagreement among plaintiff's counsel arose over Mr. Robson's successor, Mr. Roudabush, whose name was twice proposed and withdrawn before Ms. Barnhart agreed to assume the role of class representative. Appellants assert that the "only function of the successive plaintiffs in this litigation has been to serve as counsels' ticket of admission to the courtroom." They argue that the action has been propelled not by Ms. Barnhart, but by "a loose band of lawyers who want to be in court. . . ."

Appellants cite two violations of the Model Rules of Professional Conduct, one being the solicitation of a plaintiff by a lawyer for pecuniary gain, *see* Rule 7.3, and the other Rule 1.8(e), which governs an attorney's provision of financial assistance to a client. The latter rule was cited in support of the appellants' objection to an agreement between Mr. Roudabush and his attorneys, whereby it was agreed "the attorneys shall not call upon client for costs or expense of litigation." (The appellants do not contend the agreement applies to Ms. Barnhart and, in fact, Ms. Barnhart testified at her deposition that she had paid one of her attorneys, Mr. Froelich, a retainer.)

Appellants further point to the fact that the class representatives have been described by opposing counsel as "nominees," that Mr. Froelich's attorney's lien shows an entry labeled "search for class representative," and that pleadings have been filed "on behalf" of the plaintiffs' lawyers. All of these facts, appellants argue, show that Ms. Barnhart is a mere "pawn in an action being

maintained by counsel."

First, we are not convinced that the evidence put forth by the appellants supports their assertion that Ms. Barnhart was actively recruited as part of her attorneys' attempts to litigate for their own interests. Furthermore, absent more egregious conduct on the part of the class attorneys, we do not believe the rights of the plaintiffs should be prejudiced by denying them class status. *See In re Nissan Motor Corp. Anti-trust Litigation*, 22 Fed. R. Serv. 2d 63 (S.D. Fla. 1975). Arkansas has not specifically addressed the issue, but the few cases in other jurisdictions in which class action status was denied as the result of an attorney's misconduct, also involved serious questions regarding the lawyer's competence, or deficiencies in meeting the other requirements for a class action. *See Effect of Breach of Ethics or Other Misconduct by Plaintiffs' Attorney on Status of Class Action under Rule 23 of Federal Rules of Civil Procedure*, 16 A.L.R. Fed. 883 (1973). When it otherwise appears that the representative plaintiff will "fairly and adequately protect the interests of the class," allegations of attorney misconduct are more appropriately addressed to the state disciplinary committee. *See Halverson* v. *Convenient Food Mart, Inc.*, 458 F.2d 927 (7th Cir. 1972); *Kallen* v. *Nexus, Corp.*, 16 Fed. R. Serv. 2d 1016 (N.D. Ill. 1972).

Ms. Barnhart's own testimony established that she was interested in joining the lawsuit before she was ever "proposed" as its class representative and that she voluntarily agreed to accept this role. Ms. Barnhart testified at her deposition, which was submitted to the chancellor for consideration, that she had informed Mr. Robson, the initial representative, "if there was anything I could do to help in his cause to let me know." She later told him that she would be willing to be named as a plaintiff in the class action suit. Ms. Barnhart stated that several such conversations with Mr. Robson had occurred in the year prior to her joining the lawsuit. She further testified that she had made similar remarks to Mr. Froelich, commencing approximately eight months before her deposition and request for certification.

The chancellor is in the best position to assess the credibility of witnesses and where an issue turns heavily upon credibility, we will defer to the trial court. *First Nat'l Bank* v.

*Mercantile Bank*, 304 Ark. 196, 801 S.W.2d 38 (1990). Most importantly, Rule 23(d) gives the court continuing jurisdiction to require additional terms and conditions in order to ensure that the class members are being fairly and adequately represented. The chancellor indicated his disposition towards this responsibility when he granted the appellants an extension of time to take Ms. Barnhart's deposition before proceeding with the certification hearing.

We find no merit to the appellants' argument that Ms. Barnhart's representation violates Rule 23's notions of fairness and adequacy.

## II.   QUALIFICATION

Appellants next attack Ms. Barnhart's qualifications and ability to adequately represent the class.

The pertinent part of Rule 23, in effect at the time of the chancellor's decision, provided as follows:

(a)   Prerequisites to Class Action. Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring all before the court within a reasonable time, one or more may sue or defend for the benefit of all.

(b)   Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Subdivision (a) was subsequently amended to read:

(a)   Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The amended version tracks the language of the federal rule. However, in analyzing cases under our old rule, we have held that "the spirit of the federal rule is to be found in our Rule 23 even if all the words are not," and that "both set out the same basic requirements for a class action." *First Nat'l Bank* v. *Mercantile Bank*, 304 Ark. at 199, 801 S.W.2d at 39. We are satisfied that these requirements were met here, and note the longstanding rule that the trial judge has broad discretion in matters of class certification. *International Union of Elec. Workers* v. *Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988).

The appellants apparently do not contest the numerosity of the class or that there are common questions of law or fact. The "taxpayers and sanitation ratepayers of the city of Fayetteville" obviously comprise thousands, and all were subjected to an increase in sanitation rates due to Fayetteville's agreement with the Authority and the passage of Ordinance 3444. Nor can it be argued that Ms. Barnhart's claims, i.e., that the challenged contract constituted an illegal exaction and, therefore, the sanitation ratepayers are entitled to a refund of the illegally exacted monies, are not typical of the class she purports to represent. The appellants argue, however, that some tax and rate paying members of the community oppose the nullification of the city's contract and, thus, Ms. Barnhart does not adequately represent their interests. This argument is meritless.

■ Appellants offered the affidavits and testimony of six Fayetteville residents who were of the opinion that a repudiation of the city's contract with the Authority would be harmful to the community and who opposed the class action. Although case law supports the appellants' contention that adequate representation may be jeopardized if a representative's interests are in conflict with other class members, *see Payne* v. *Travenol Labs, Inc.*, 673 F.2d 798 (5th Cir. 1982), six residents who disagree with what, otherwise, is a potentially legitimate claim, common to thousands of people, does not justify decertification.

It is further argued by the appellants that Ms. Barnhart is unqualified to represent the class because she has not followed the

proceedings, did not comply with discovery requests and was not candid in her deposition, and, lastly, because she does not pay real property taxes she cannot represent the interests of the purported class members.

We summarily dismiss the latter three arguments as we do not find sufficient support for them in the record, nor do we find them disqualifying. Ms. Barnhart does pay sanitation rates and sales taxes and this is sufficient for purposes of her representation of the class at issue.

As for appellants' assertion that Ms. Barnhart has not adequately followed the proceedings, the representative must simply "display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation." *Gentry* v. *C & D Oil Co.*, 102 F.R.D. 490, 495 (W.D. Ark. 1984); *see also First Nat'l Bank, supra.* Ms. Barnhart's answers to questions at her deposition, and at the hearing, indicate she has more than adequate knowledge and interest in the issues involved in the litigation. She has clearly articulated her understanding of the lawsuit and willingness to pursue the matter, and we have no hesitancy in holding that she is an adequate representative of the class she purports to represent.

## III.  NOTICE

Finally, the appellants contend the chancellor's prescribed notice to the absent class members, which was by publication in two Washington County newspapers, was inadequate.

As an initial matter, Ms. Barnhart argues the chancellor's separate order with regard to notice is not appealable and that the appellants have no standing to challenge notice.

We explained in *Ford Motor Credit Co.* v. *Nesheim,* 285 Ark. 253, 254, 686 S.W.2d 777, 777 (1985) (reversed on other grounds) (citing *Eisen* v. *Carlisle & Jacquelin*, 479 F.2d 1005 (2nd Cir. 1973)), that since "an order sustaining a class action allegation involves issues 'fundamental to the further conduct of the case,' . . . the order is also separable from the merits of the case . . ." and thus an order certifying a class action is reviewable on interlocutory appeal. Likewise, an order prescribing notice of the class action is "fundamental to the further

conduct of the case," and is appealable.

Appellants also have standing to challenge the notice since they are not asserting the due process rights of the class, *see Ford Motor Credit Co. v. Rogers*, 285 Ark. 64, 685 S.W.2d 145 (1985), but rights of their own. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985). Without a determination of the issue, the appellants may be subject to multiple lawsuits from absent class members who claim they never received adequate notice.

As stated previously, an older version of Rule 23 was in effect at the time of the chancellor's decision. Under that version, subsection (d) provided that the trial court "may order that notice be given, in such manner as it may direct. . . ." The amended version, which appellants urge us to apply, requires "in any action in which monetary relief is sought," class members are to be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." The new rule goes on to specify what information is to be contained in the notice.

In our *per curiam* opinion, delivered December 10, 1990, we expressly stated the changes in the rule would become effective February 1, 1991. The established rule is that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. *Gannett River States Pub. Co. v. Arkansas Jud. Disc. & Disabil. Comm'n*, 304 Ark. 244, 801 S.W.2d 292 (1990). Court rules are to be applied in the same manner. *Id.*

Here, publication in two local newspapers, once a week for three weeks, notifying the absent class members of the pendency of the class action, the claims asserted, the remedies sought, and information as to the class representative, counsel, and time and location of the trial, was more than adequate under former Rule 23(d). Furthermore, the chancellor noted its continuing jurisdiction to correct any deficiencies as to notice during the pendency of the litigation.

The chancellor's orders are affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur. The majority does not decide the following question: Whether ARCP Rule 23, the class action rule, is applicable in an illegal exaction suit. This court in the *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), answered this question in the affirmative. In a proper case, we should review that part of the holding in *Cash*, and in my view, reverse it. However, because this issue was not fully developed at trial, I agree with the majority's reluctance to decide this important issue in this appeal.

Here, the appellee brought this case as a Rule 23 class action suit. On appeal, however, she argues forcefully that, because this is an illegal exaction suit, all the requirements of Rule 23 need not be met. She points out that Ark. Const. art. 16, § 13, the state's illegal exaction provision, is self-executing and imposes no terms or conditions upon a citizen to bring it. In *Price* v. *Edmonds*, 231 Ark. 332, 330 S.W.2d 82 (1959), this court held one need only show he is a citizen, property owner, taxpayer, rate payer or consumer to maintain an exaction suit. Such illegal exaction cases have been filed for decades prior to the promulgation of Rule 23 or its earlier comparable statute without requiring more than those matters stated in *Price*. Nor had this court recognized Rule 23's application to illegal exaction suits until its 1982 ruling in *Cash*.

Without unduly lengthening this concurrence on a point not decided, I suggest that the application of Rule 23 to illegal exaction suits makes little sense except that the notice requirement afforded under Rule 23 does assure notice to all taxpayers, thus guarding against the so-called "friendly lawsuit" filed by parties attempting to protect their private or vested interests in what is basically an action involving the public's interests. Such notice, however, can be afforded by a well-drafted rule or law without also requiring all the impediments presented under Rule 23. Clearly, an illegal exaction proceeding differs from the type class action contemplated under Rule 23 where the primary objective is a suit for damages.

While there is much to say on this subject, the majority is

correct to defer its consideration of this important issue in a case where it is properly developed at trial and argued on appeal.