CHEQNET SYSTEMS, INC. *v.* Susan MONTGOMERY

95-779                                         911 S.W.2d 956

Supreme Court of Arkansas
Opinion delivered December 18, 1995
[Petition for rehearing denied January 29, 1996.*]

* Jesson, C. J., not participating

*Cross & Mills*, by: *Junius Bracy Cross, Jr.*, for appellant.

*Kelly Law Firm, PLC*, by: *A.J. Kelly*, for appellee.

ROBERT H. DUDLEY, Justice. This is an interlocutory appeal from the certification of a class. *See* Ark. R. App. P. 2(a)(9). We affirm the certification. The facts are that Susan Montgomery filed a class-action complaint in which she alleged that Cheqnet Systems, Inc., committed multiple violations of the Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692 (1994). Cheqnet filed a motion to dismiss in which it contended that Montgomery failed to meet the requirements for class certification pursuant to Ark. R. Civ. P. 23. Montgomery filed an amended class-action complaint, again alleging that Cheqnet committed multiple violations of the Fair Debt Collection Practices Act. Montgomery's allegation that is pertinent to this interlocutory appeal is that Cheqnet violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by collecting $10 more than it was entitled to collect under Arkansas law for returned checks. Section 4-60-103 (Repl. 1991) of the Arkansas Code Annotated provides a maximum collection fee of $15.00 per returned check, and Montgomery's complaint alleges that Cheqnet collected or attempted to collect a fee of $25.00 on each returned check. In her amended complaint, Montgomery alleges that she represents the class of debtors who had been, continued to be, and would be adversely affected by the actions and omissions of Cheqnet. Cheqnet filed an answer to the amended complaint and objected to the motion to certify the class. Cheqnet contended that Montgomery did not pay the alleged overcharge for her returned check; therefore, her claim was not typical of the proposed class.

At the hearing on certification, Montgomery limited the class-certification request to the issue involving overcharge for returned checks as a violation of the federal Fair Debt Collection Practices Act. She called an assistant attorney general as her first witness. Cheqnet objected to testimony by the assistant attorney general on the ground that the attorney general's office had obtained Cheqnet's records through a civil investigation demand, and the attorney general is prohibited from publicly disclosing those records. *See* Ark. Code Ann. § 4-88-111 (Repl. 1991). After an extended colloquy between counsel for both parties, the witness, and the trial judge, the court sustained Cheqnet's objection. This first colloquy covers five pages in the transcript. After the trial court's ruling, counsel, the witness, and the trial court

again engaged in a lengthy colloquy, four pages of transcript this time, and the following exchange occurred:

> THE WITNESS: Your Honor, as a result of those written complaints that were received, Ms. Mikeless issued a civil investigative demand, which is basically a pre-litigation discovery tool.
>
> THE COURT: And found they were doing this across the board.
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Okay. Sure.
>
> THE WITNESS: And that there were roughly over 3,000 —
>
> THE COURT: Yeah, I knew —
>
> THE WITNESS: — consumers that had been overcharged.

Counsel did not specifically object to the statement and did not move to strike it from the record.

Montgomery testified generally as to the underlying facts of the case, her involvement in the case, and her qualifications as class representative. Cheqnet called its general manager who testified that Cheqnet was in the process of repaying the individuals who had been overcharged. The witness testified that the repayment was pursuant to an agreement between Cheqnet, the Attorney General, and the State Board of Collections. During closing arguments, Cheqnet's attorney stated that appellant had already started to send notices and repay the individuals it had overcharged. The following then occurred:

> THE COURT: You're talking between, say, thirty and $50,000.00.
>
> MR. CROSS: Probably at a minimum.
>
> THE COURT: Just roughly guessing, like I say, if there's three to 5,000 people and maybe more, you know, out there. I'm just concerned that your client has the

resources to do that. I don't know that he does. He may. I don't know.

Well, in any event, —

At the close of the hearing the court took the matter under advisement.

On March 6, 1995, the trial court held another hearing and ruled that the class would be certified. A third hearing was held on April 4, 1995, to determine the particulars of the order certifying the class and to discuss notice provisions and discovery of potential class members. The trial court entered the order certifying the class on April 5, 1995. The order defined the class as "all of those persons from whom Cheqnet Systems, Inc., attempted to collect, or actually collected, a $25.00 service fee per returned check."

▇▇▇ Cheqnet first argues that the trial court erred in allowing the assistant attorney general to testify to the number of people Cheqnet had overcharged since the information came to the attorney general's office as a result of a civil investigation demand. The argument contains a fallacious assumption because the trial court did not make a ruling when the evidence came in. The only ruling made by the trial court was to sustain Cheqnet's objection to the admission of documents taken in the attorney general's civil investigation. The testimony about the number of people involved came four transcript pages later, and it came in when the assistant attorney general volunteered the information without objection, and without a motion to strike. Rule 103 of the Arkansas Rules of Evidence provides that when evidence is admitted, as this evidence was, the record must reflect a "timely objection or motion to strike . . . stating the specific ground of objection" or else any question about its admission is waived. Ark. R. Evid. 103(a)(1); *Mills* v. *State*, 321 Ark. 621, 906 S.W.2d 674 (1995). The evidence came in without objection and without a motion to strike. Thus, the trial court committed no error, and except in circumstances not material to this case, we do not reverse a trial court absent some error. *Stevens* v. *State*, 319 Ark. 640, 893 S.W.2d 773 (1995). In addition, Cheqnet's attorney admitted the same information to the trial court. A party cannot admit a fact to the trial court, and then on appeal contend that the case must be reversed because that fact was not proven. *Vin-*

*son Elec. Supply, Inc.* v. *Poteete*, 321 Ark. 516, 905 S.W.2d 831 (1995). Cheqnet next argues that the trial court erred in certifying the class in this action. This court reviews class certification under an abuse of discretion standard. *Arthur* v. *Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995); *see also Union Nat'l Bank* v. *Barnhart*, 308 Ark. 190, 197, 823 S.W.2d 878, 881 (1992) (noting the "longstanding rule that the trial judge has broad discretion in matters of class certification").

■■ Rule 23 of the Arkansas Rules of Civil Procedure provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a). Rule 23 was amended to its present version by per curiam order in 1990. *In re Changes to the Arkansas Rules of Civil Procedure*, 304 Ark. 733 (1990). However, many of the principles found in cases prior to the amendment still apply. *Union Nat'l Bank* v. *Barnhart*, 308 Ark. 190, 197, 823 S.W.2d 878, 881 (1992).

■ The numerosity requirement is met. We have held that 184 class members were enough to satisfy the numerosity requirement. *See Summons* v. *Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991). In the present case, the proposed class possibly consists of 3,000 persons. While the exact number of the proposed class may not have been proved, "[t]he exact size of the proposed class and the identity of the class members need not be established for the court to certify a class, and the numerosity requirement may be supported by common sense." *Brewer* v. *Friedman*, 152 F.R.D. 142, 143 (N.D. Ill. 1993).

■ Rule 23(a) requires common questions of law or fact. Ark. R. Civ. P. 23(a)(2); *International Union of Elec., Radio & Mach. Workers* v. *Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988). This requirement is met. Common questions of fact concern

whether appellant charged $25 per dishonored check. Common questions of law concern the legality of appellant's charging $25 per dishonored check and the applicability of the federal Fair Debt Collection Practices Act. These questions apply to the entire class of those individuals who were overcharged by appellant.

██ ██ The third requirement under Ark. R. Civ. P. 23(a), the requirement of typicality, was fully addressed by this court in *Summons* v. *Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991). In that case, we quoted H. Newberg, *Class Actions*, § 3.13 (1985), as follows:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Id.* at 121, 813 S.W.2d at 243. The court in *Summons* further stated, "Although the Summonses' allegations as to their injuries and damages are different from those they describe for other members of the class, their claims are typical in the sense that they arise from the alleged wrong to the class which includes the wrong allegedly done to them, and that is sufficient." *Id.* The same can be said for the case at bar. Montgomery's injuries and damages arise from the same wrong allegedly committed against the class — the collection or attempt to collect for dishonored checks in violation of Arkansas statutory law. The fact that the injuries and damages suffered as a result of the alleged wrongdoing may vary among class members does not make this action fail the typicality requirement, and the fact that Montgomery did not actually pay the overcharge does not keep her claim from

being typical of the class since the class is defined as those persons from whom appellant collected or attempted to collect a $25 service fee per returned check. Cheqnet's argument that Montgomery was not damaged involves a fact question that is common to all class members from whom appellant attempted unsuccessfully to collect $25.

Cheqnet argues that Montgomery cannot "fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). In *Union National Bank* v. *Barnhart*, 308 Ark. 190, 823 S.W.2d 878 (1992), we wrote that "the representative must simply 'display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.'" *Id.* at 198, 823 S.W.2d at 882 (citations omitted). At the hearing on the motion to certify, Montgomery testified that this case concerned a violation of the Fair Debt Collection Practices Act and that the violation was overcharging people by $10.00. She testified that she was interested in pursuing the action. She testified that although she relocated to Florida, she stayed in regular contact with her attorney and that the case could only be maintained as a class action because "on an individual basis, this case isn't much," but that as a class action it could make a difference. Appellee's testimony demonstrates more than the minimum requirements required under *Barnhart. See also Summons* v. *Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991).

Finally, this action also meets the requirements under Ark. R. Civ. P. 23(b) that the common question of law or fact predominate over individual questions and the maintenance of a class action is the superior method of handling the adjudication of the controversy. The question of predominance of common questions and superiority are "very much related to the broad discretion conferred on a trial court faced with them." *Summons* v. *Missouri Pac. R.R.*, 306 Ark. 116, 123, 813 S.W.2d 240, 243 (1991).

In summary, the trial court did not abuse its discretion in finding that a class action is a superior method of handling this controversy.

Affirmed.

JESSON, C.J., not participating.