# FORD MOTOR CREDIT COMPANY *v.* Ross H. NESHEIM, et al.

85-34                                          696 S.W.2d 732

Supreme Court of Arkansas
Opinion delivered September 30, 1985

*Griffin Smith and W.R. Nixon, Jr., P.A.*, for appellant.

*Meredith Wineland*, and *Boswell, Tucker & Smith*, by: *David E. Smith*, for appellees.

SIDNEY P. DAVIS, JR., Special Justice. The issue presented by this appeal is whether the appellees can maintain their suit as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. We find that the Chancellor erred in certifying this case as a class suit and, accordingly, reverse.

Shortly after December 2, 1982, the effective date of Amendment 60 to the Arkansas Constitution, appellant, Ford Motor Credit Company (hereinafter "Ford Credit"), began purchasing from Arkansas Ford dealers installment contracts bearing interest rates up to 17 percent. On December 13, 1982, appellant purchased from Cecil Tate Ford of Malvern a contract executed by appellee, Gerald Harrison, bearing an annual percentage rate of 14.25 percent. On February 22, 1983, appellant purchased from Walt Bennett Ford an installment contract executed by appellees, Stanley and Mary Lou Cullipher, bearing an annual percentage rate of 15.75 percent. On March 4, 1983, appellant purchased from Union Lincoln-Mercury, Inc., a contract executed by appellee, Ross H. Nesheim, bearing an annual percentage rate of 17 percent. In each case, it appears that interest exceeding five percent over the applicable federal reserve discount rate was charged.

On July 11, 1983, this Court handed down its decision in *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983), in which it interpreted Amendment 60 as providing a two-fold limitation on the maximum amount of interest a lender can charge on a consumer loan or credit sale—the lesser of 17 percent or five percent over the Federal Reserve discount rate at

the time of the contract. The *Bishop* decision became final on September 12, 1983, when rehearing was denied. Two days later, appellant notified appellees and some 6,000 other Ford Credit customers of this Court's ruling and of appellant's intention to correct each contract to insure that no customer would pay interest in excess of five percent above the discount rate on the date the contract was executed. On October 13, 1983, appellant sent follow-up letters to appellees and its other Arkansas customers, advising them that the corrections had been made and explaining how the changes lowered the annual percentage rate, balance due and monthly payment amount for each contract.

On October 25, 1983, appellee Nesheim filed a class action suit against appellant in the Chancery Court of Pulaski County, alleging usury and seeking to recover the penalties provided for by Amendment 60 on behalf of himself and all other consumer debtors similarly situated. Appellees Harrison and the Culliphers filed a similar class action suit against appellant in Pulaski County Circuit Court on December 27, 1983. The Circuit Court action was subsequently transferred to Chancery Court and consolidated with appellee Nesheim's suit.

On October 26, 1984, the Chancellor entered an order certifying the case as a class action under Rule 23. Appellant filed both a notice of appeal from the certification order and a petition for a writ of prohibition, challenging the constitutionality of Rule 23. The petition for a writ of prohibition was denied on the ground that appellant had no standing to challenge the Rule's constitutionality. *Ford Motor Credit Company* v. *Rogers*, 285 Ark. 64, 685 S.W. 2d 145 (1985). The Chancellor's order certifying this case as a class action is appealable pursuant to Rule 2(a)(9) of the Rules of Appellate Procedure. See Per Curiam Order of March 18, 1985.

In order to determine whether the Chancellor erred in certifying this case as a class action, it is necessary first to examine the language of Rule 23. Subsection (a) of Rule 23 provides that where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring all before the Court within a reasonable time, one or more may sue or defend for the benefit of all. This Court has little difficulty finding that the prerequisites of

subdivision (a) are satisfied here. Certainly, the parties are numerous, making it impracticable to bring all of them before the Court within a reasonable time. It can also be said that a common question exists as to whether Ford Motor Credit Company's actions in charging interest at a rate in excess of that allowed by law and then attempting to correct its contract to conform with the law gives rise to a cause of action in favor of its Arkansas customers.

However, in order to be maintainable as a class action, the trial court must also find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Arkansas Rule of Civil Procedure 23(b). It is on these two points that we must say that the Chancellor misdirected her discretion.

In reaching our decision, we are guided by the principle that, while a Chancellor does, indeed, have discretion in determining whether to certify a suit as a class action, that discretion is not unlimited. It is fundamental that the latitude of a Chancellor's discretion increases proportionately as the situation presents to the trial judge a question that cannot equally well be presented to this Court by the printed record. Where the question on appeal turns heavily on the credibility of witnesses, for example, we defer to the superior position of the Chancellor in that regard. *Jackson* v. *Farm and Commercial Properties*, 284 Ark. 130, 680 S.W. 2d 105 (1984). This case is not one in which resolution of the issue depends upon the assessment of critical testimony or in which the Chancellor had some unique advantage not found in the printed record. Consequently, this Court not only may, but must, take a closer look at the Chancellor's findings.

First, we cannot agree that the common questions predominate over the individual ones. In its answers to the complaints filed by appellees, Ford Credit pled the defenses of mutual mistake, waiver, estoppel and set-off. The defenses raised by Ford Credit may be available against some customers but not against others, depending on the facts underlying each contract. Furthermore, Ford Credit filed a counterclaim against appellee Harrison, alleging that he defaulted on his contract. Counter-

claims would likely be asserted against other class members who become delinquent on their contracts. The Chancellor attempted to avoid this problem by limiting the class to those loan debtors who are not delinquent in their principal payments to Ford Credit. However, disputes as to whether customers are delinquent in principal payments will inevitably arise, so that the circumscribed class description would create more problems that it would solve.

In part because this case, if certified as a class action, will surely splinter into many individual suits, the class action would not be superior to individual remedies for the fair and efficient adjudication of the controversy. We reached the same conclusion in *Drew* v. *First Federal Savings and Loan Association of Fort Smith*, 271 Ark. 667, 610 S.W. 2d 876 (1981), a case in which mortgagors sought to challenge First Federal's exaction of a one percent assumption fee by means of a class action. There, we stated:

> Undoubtedly, First Federal itself treated the borrowers as a class in exacting a uniform fee for everyone, but its conduct was not fraudulent or criminal. Consequently, we cannot fairly hold that First Federal is somehow unable to present whatever defense or mitigation it may have in individual instances. Thus, the class suit may become not one case but a conglomeration of hundreds of individual cases.

The splintering of this action into a myriad of individual suits would, in turn, create serious problems of manageability. We recognized the importance of such considerations in *Ross* v. *Arkansas Communities, Inc.*, 258 Ark. 925, 529 S.W.2d 876 (1975), a purported class action, like this one, alleging usury. In *Ross*, we said:

> Moreover, this Court must be realistic in its appraisal of the situation, and we cannot ignore the serious practical problems which would arise if we allowed the case to proceed as a class action. Considerable expense would be involved. How could the limited staff of the Chancery Court take care of the necessary proceedings, answer the inquiries for further information on the 833 transactions and keep the members of the class advised as to the status

of the case thereafter? It is apparent a maze of procedural difficulties would be encountered.

The procedural problems would be compounded in this case, involving, as it does, 6,000 separate retail installment contracts.

This Court is also persuaded by the fact that there is no evidence in the record to suggest that there even exists a willing class of litigants. As in *Drew*, it is questionable whether the claims of appellees are typical of the claims of the would-be class. Appellees Harrison and the Culliphers are making partial payments (principal only). Appellee Nesheim paid off his contract prior to maturity. It is a reasonable assumption that the appellees are atypical members of the purported class. The typical member is, more than likely, the individual who is making timely contract payments each month. Such an individual may have no interest in suing Ford Credit. He may be more interested in maintaining a harmonious business relationship with Ford Credit in the hope of obtaining financing for future Ford purchases. If that is the case, he should not be made an unwilling litigant in an action filed by four individuals who have chosen, under varying circumstances, to test their claims. The language of Amendment 60 itself—"A person who has paid interest in excess of the maximum lawful rate *may* recover. . . ." (Emphasis supplied)—suggests that this is not a remedy to be forced on an otherwise satisfied customer. Appellees should not be allowed to go into a Court of Equity, which traditionally abhors penalties, to force satisfied borrowers to extract a penalty.

Finally, it is significant that no one will be prejudiced by the denial of class certification. Appellees certainly will not be prejudiced, for they are perfectly free to pursue their individual claims in this action. Other similarly situated persons interested in penalizing Ford Credit are likewise free to file individual actions. There does not appear to be any statute of limitations problem. The United States Supreme Court has held that the filing of a class action tolls the statute of limitations as to all asserted members of the class. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).

It is apparent from our prior decisions in *Ross* and *Drew* that, unlike the federal courts, we do not resolve doubts in favor of class actions. In fact, we construed Rule 23, as well as its

predecessor, Ark. Stat. Ann. Section 27-809 (Repl. 1962), rather strictly in both of those cases. Against that history, we find that our carefully circumscribed class action rule was not adopted to authorize the maintenance of a suit such as this as a class action.

Reversed.

PURTLE, J. and NEWBERN, J., not participating.