REYNOLDS ET AL., APPELLEES, *v.* CSX TRANSPORTATION, INC. ET AL., APPELLANTS.

(No. 11467—Decided August 29, 1989.)

*Gardner, Ewing & Souza, Gary L. Gardner, Joseph C. Souza* and *C. David Ewing; Ruschau & Lehman* and *Steve J. Ruschau; Ruppert, Bronson & Chicarelli, James D. Ruppert* and *John D. Smith; Hochman & Horwitz* and *James B. Hochman;* and *Waite, Schneider, Bayless & Chesley Co., L.P.A.,* and *Stanley M. Chesley,* for appellees.

*Bieser, Greer & Landis* and *A. Mark Segreti, Jr.;* and *Lindhorst & Dreidame Co., L.P.A.,* and *James L. O'Connell,* for appellants CSX Transportation, Inc. and CSX Corporation.

*Rendigs, Fry, Kiely & Dennis* and *W. Roger Fry,* for appellants Albright & Wilson Americas, Inc. and Albright & Wilson Americas, Division of Tenneco Canada, Inc.

*Freund, Freeze & Arnold* and *Gordon D. Arnold;* and *Johnston, Cusack & Bell, Ltd., William V. Johnson, John A. Childers, H. Patrick Morris* and *Frederick S. Mueller,* for appellant Union Tank Car Company.

*Robert B. Bartlett, Jr.,* for appellants.

FAIN, J. Defendants-appellants CSX Transportation, Inc. et al. and CSX Corporation et al., hereinafter collectively referred to as "CSX," appeal from the decision and order of the trial court conditionally approving certification of a class action for five "proposed subclass[es[1]] * * * as to the issues of negligence and malice, if any, of [CSX]," with regard to a July 8, 1986 Miamisburg train derailment.

CSX presents four basic arguments: (1) that the trial court abused its discretion in certifying a class action as to the five proposed subclasses since plaintiffs-appellees Robert Reynolds and Dale Zink et al., hereinafter collectively referred to as "plaintiffs," have failed to meet their burden of proof under Civ. R. 23; (2) that the trial court's certification of a class action on the issues of negligence and malice is "totally contrary to the letter and spirit of Rule 23"; (3) that the trial court's certification of a class action on the issue of malice would deny CSX its constitutional right to trial by jury on the punitive damages issue; and (4) that the trial court abused its discretion in rejecting factual findings of the Master without independently reviewing a transcript of the evidence.

---

[1] The five proposed subclasses are identified by the parties as: (1) the Displaced Persons Class, (2) the Wage Loss Class, (3) the Lost Profits Class, (4) the Damaged Property Class, and (5) the Personal Injury Class.

We conclude that the trial court's certification of a class action for the five proposed subclasses as to the issues of negligence and malice was not an abuse of discretion. We further conclude that the certification of the malice issue will not deny CSX its constitutional rights, and that the trial court did not reject the factual findings of the Special Master ("Master"). Accordingly, the judgment of the trial court will be affirmed.

I

The following facts, as ascertained by the Master, were adopted by the trial court:

"On July 8, 1986, at approximately 4:25 p.m., fifteen cars of the Baltimore & Ohio Railroad Company's Southland Flyer derailed as the train proceeded over Bear Creek in Miamisburg, Ohio. A tank car containing yellow phosphorous breached as a result of the derailment, and its contents ignited upon exposure to the air. The phosphorous burned for approximately three and one-half hours, until extinguished by safety personnel.

"On the following evening of July 9, 1986, the substantial quantity of phosphorous remaining in the disabled tank car again ignited. The resulting fire was not finally extinguished until the morning of July 12, 1986.

"During each of the two episodes of fire, the burning phosphorous emitted a dense, billowing cloud of white smoke which was carried by winds at ground level beyond the immediate site of the derailment. Mass evacuations ensued, both by orders of public officials and by personal choice. A great number of individuals in nearby residential neighborhoods and commercial districts were directly exposed to the smoke cloud; a significant number of those exposed sought medical treatment at local hospital emergency rooms. Some businesses,

even at points relatively distant from the derailment site, ceased operations, sending employees home and closing the doors to their clientele.

"On July 11, 1986, while the second fire was still burning, a complaint was filed in this court against the railroad, the lessee of the tank car and consignee of the phosphorous, and the manufacturer of the phosphorous. Relief in damages was sought by eleven named individuals and one business entity, and on behalf of a class estimated to consist of more than 25,000 other claimants, each of whom allegedly suffered harm as a result of the derailment. The complaint was almost immediately amended to join approximately 100 additional individuals and a half dozen business entities as named party-plaintiffs. On July 24, 1986, plaintiffs filed a motion for certification of the action as a class action pursuant to Ohio Civil Rule 23.

"A second lawsuit concerning the derailment was filed in this court in November, 1986, by thirty-two individuals and business entities. The plaintiffs in that action sought monetary relief against the railroad and the lessor of the tank car, for themselves and on behalf of a class of more than 35,000 unnamed claimants. The two actions were consolidated on December 12, 1986.

"On October 5, 1987, the court appointed a Special 'Master,' pursuant to Ohio Civil Rules 23(D) and 53, to hear plaintiffs' motion for class certification of the consolidated actions, and to make recommendations to the court regarding the disposition of the motion.

"The order of appointment authorized the Master to hear all matters relating to class certification issues. Proceedings under the order of appointment included two general meetings between the Master and counsel, the consideration and disposi-

tion of a variety of discovery disputes related to certification issues, and ultimately culminated in a two-day hearing on the merits of the certification motion, accompanied by extensive pre- and post-hearing briefs. The Master's report and recommendation was submitted pursuant to the order of appointment and Ohio Rule of Civil Procedure 53(E) on July 8, 1988.''

In relevant part, the Master found:

(1) that the five proposed subclasses were ambiguously defined and did not permit ready identification of their memberships;

(2) that the five proposed subclasses satisfied the four requirements of Civ. R. 23(A),[2] except that the Damaged Property and Personal Injury subclasses failed to meet the ''numerosity'' requirement of Civ. R. 23(A)(1);

(3) that the plaintiffs failed to show that any one of the three subdivisions of Civ. R. 23(B)[3] was applicable to their case;

(4) that separate certification of the negligence and malice issues was unwarranted; and

(5) that the plaintiffs' motion for certification of this action as a class action should be overruled in its entirety.

Both the plaintiffs and CSX objected to the Master's report and recommendation. Plaintiffs argued, in essence, that the proposed subclasses were not ambiguously defined, and that they had met the burden of proving that their case should proceed as a class action pursuant to Civ. R. 23. Plaintiffs presented their objections without providing the trial court with a transcript of the proceedings held before the Master. CSX opposed the plaintiffs' objections and also argued that the plaintiffs had failed to meet certain specified requirements of Civ. R. 23.

---

[2] Civ. R. 23(A) provides that:

''One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.''

[3] Civ. R. 23(B) provides that:

''An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

''(1) the prosecution of separate actions by or against individual members of the class would create a risk of

''(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

''(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

''(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

''(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.''

The trial court conducted an oral hearing on the parties' objections. On February 28, 1989, the trial court filed its decision and order in which it rejected certain findings of the Master and held that "[a] class action is herein conditionally approved as to all described claimants within each proposed subclass, excluding all claimants who have released their claims * * *. The certification is as to the issues of negligence and malice, if any, of defendants." From that judgment, CSX appeals.

## II

CSX's first assignment of error is as follows:

"It is an abuse of discretion to certify a class action under Rule 23(C)(4), Ohio Rules of Civil Procedure, where the moving parties have not demonstrated compliance with the require-ments of Rule[s] 23(A) and (B)."

In essence, CSX is arguing that: (1) the trial court erred in certifying this action as a class action for the five subclasses because the subclasses were ambiguously defined, and because the plaintiffs failed to show that each subclass complied with the requirements of Civ. R. 23(A) and (B); and (2) the trial court's certification of a class action on the issues of negligence and malice is "totally contrary to the letter and spirit of Rule 23." We will first address CSX's contention that the trial court erred in certifying this action as a class action for the five subclasses. Then we will discuss the trial court's certification of the issues of negligence and malice.

During oral argument, counsel for both CSX and plaintiffs agreed that the class as a whole was sufficiently defined that it would be possible to determine who, as members of the class, would be bound by the judgment of this court on appeal. We have reviewed the definitions of the five subclasses contained in the trial court's order, and conclude that those subclasses have been defined satisfactorily at this stage in the proceedings, at least in view of the fact that those definitions may be refined later by the trial court, after the facts in this case are more fully developed. Therefore, we conclude that CSX's argument that the subclasses are ambiguously defined is not well-taken.

In *Warner* v. *Waste Management, Inc.* (1988), 36 Ohio St. 3d 91, 521 N.E. 2d 1091, paragraph one of the syllabus, the Supreme Court of Ohio held that "[a] trial judge must make seven affirmative findings before a case may be certified as a class action. Two prerequisites are implicitly required by Civ. R. 23, while five others are specifically set forth therein." The two implied prerequisites are that: (1) an identifiable class must exist before certification is permissible, *i.e.,* the definition of the class must be unambiguous; and (2) the class representatives must be members of the class. The five express prerequisites are found in Civ. R. 23(A) and (B). Civ. R. 23(A) requires four independent findings: "numerosity," "commonality," "typicality," and "adequacy of representation." The fifth express prerequisite is that the trial judge must find that one of the three Civ. R. 23(B) requirements is met before a class may be certified.

In the case before us, the trial court approved all findings of the Master consistent with certification of the five subclasses. The trial court rejected those findings of the Master inconsistent with certification. In essence, the trial court found that all seven of the prerequisites were present in this case and that certification of a class action was appropriate. The trial court concluded that "[n]o other 'available method' that this court can conceive can get final answers to these questions any faster or better than class action."

Upon review of the record in this

case, we conclude that the trial court's judgment was supported by the evidence and was not an abuse of discretion. Accordingly, that portion of CSX's first assignment of error asserting that the trial court improvidently certified a class action without making the appropriate findings is overruled.

We will now analyze the trial court's certification of this action as a class action with regard to the issues of negligence and malice. In Ohio, "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks* v. *C. P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 509 N.E. 2d 1249, syllabus; *Schmidt* v. *Avco Corp.* (1984), 15 Ohio St. 3d 310, 312-313, 15 OBR 439, 441, 473 N.E. 2d 822, 824; *Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98, 9 OBR 326, 459 N.E. 2d 507, paragraph one of the syllabus. Due deference must be given to the trial court's decision because a trial court, which routinely handles case-management problems, is in the best position to analyze the difficulties that can be anticipated in litigation of class actions. *Marks* v. *C. P. Chemical Co., supra,* at 201, 509 N.E. 2d at 1252.

In the case before us, the trial court relied on the findings of the Master and held that the common questions found to exist as to all members of the subclasses were "those which pertain to the conduct of * * * [CSX] up to the time of the derailment and fire on July 8, 1986. These may be described as the negligence (fault) and malice (punitive damage) issues." The court reasoned that certain issues, such as proximate cause and compensatory damages, were so individualized that they could not be handled as part of the class action. However, the court concluded that:

"* * * One time answers can be had to the issues of negligence and malice, such as: What were the duties of the respective defendants? What did they undertake to do or not do in respect to those duties, if any? Was there a breach of duty? Was there a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm?"

We conclude that the trial court's decision to certify the plaintiffs' case as a class action as to the issues of negligence and malice was not an abuse of discretion. The court's order was not unreasonable, arbitrary, or unconscionable. Rather, it was a well-reasoned decision based upon the trial court's unique ability to determine which procedural devices are best for handling such unwieldy cases.

Accordingly, that portion of CSX's first assignment of error concerning the certification of the negligence and malice issues is overruled.

### III

CSX's second assignment of error is as follows:

"The trial court erred and abused its discretion in certifying a class on 'malice' that would deny defendants their constitutional right to trial by jury of the punitive damages issue."

CSX expresses four separate concerns with regard to this assignment of error: (1) that the trial court's certification of the malice issue would erroneously allow a jury to assess punitive damages without any finding of actual damages; (2) that the issues of conduct and punitive damages are so interwoven, a fair trial requires that these issues be tried together before the same jury; (3) that Section 5, Article I of the Ohio Constitution preserves the right to a jury trial on the malice issue; and (4) that a jury demand in this case would make the class action unmanageable. CSX concludes that the

trial court's certification of malice was an abuse of discretion. We disagree.

In the first instance, the trial court's certification of the malice issue would not allow a jury to assess punitive damages without finding actual damages. As noted by CSX, Ohio law provides that exemplary or punitive damages may not be awarded in the absence of proof of actual damages. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 82, 10 OBR 408, 413, 461 N.E. 2d 1273, 1278; *Richard* v. *Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E. 2d 109, paragraph one of the syllabus. However, there is no requirement in Ohio that the allocation of actual damages be made concurrently with the evaluation of the defendant's conduct. The relative timing of these assessments is not critical. *Jenkins* v. *Raymark Industries, Inc.* (C.A. 5, 1986), 782 F. 2d 468, 474. Therefore, CSX's first concern is without merit.

In its second argument, CSX contends that the issues of "conduct" and punitive damages are so interwoven that they must be tried together before the same jury. Again, this concern is without merit. A determination of whether punitive damages are appropriate in this case turns solely on the conduct of CSX *prior* to the derailment. That set of facts is common to all the plaintiffs and is not tainted by thousands of individualized factors. Therefore, the punitive damages issue can be decided by a jury other than the one that may hear the individual claims of causation and actual damages.

CSX's third and fourth arguments involve the issue of whether a jury should hear the punitive damages issue. On the one hand, CSX argues that the Ohio Constitution provides it with a right to a jury trial on this issue. On the other hand, CSX argues that a jury demand makes the class unmanageable. We conclude that CSX is

entitled to have the punitive damages issues tried before a jury. We further conclude that trying the issue before a jury will be no more unmanageable than trying the issue to the court. The factual issue simply concerns CSX's conduct prior to the derailment.

For all the foregoing reasons, CSX's second assignment of error is overruled.

## IV

CSX's third assignment of error is as follows:

"The trial court erred and abused its discretion in summarily rejecting factual findings of the Master without independently reviewing a transcript of the evidence."

In essence, CSX argues that the trial court abused its discretion by rejecting the Master's findings of fact without reviewing a transcript of the proceedings before the Master. CSX contends that because the plaintiffs' objections go to the weight of the evidence, the trial court was required to supplement the Master's report by referring to a transcript of the testimony.

In *Garcia* v. *Tillack* (1983), 9 Ohio App. 3d 222, 98 OBR 372, 373, 459 N.E. 2d 918, 919, the court held that:

"Civ. R. 53 provides for the reference of certain disputes to referees. Under this provision, the referee has the power to regulate the proceedings, take evidence, and prepare a report for the trial court, which may include recommendations as to those matters submitted. Upon receipt of the report, the trial court has several options. It may reject or modify the report, hear additional evidence, return it to the referee with instructions, or hear the matter. Only the trial court can render a judgment in the case.

"Civ. R. 53 requires the referee to prepare a report which contains such

factual information as may be necessary to support the findings and recommendations made. * * * The trial judge is then required to review the report and make an independent analysis of the underlying facts involved in the dispute. It is the duty of the trial judge to critically review and verify the correctness of the referee's report prior to its adoption. * * *"

However, where a party objects to the referee's report, and such objection challenges the weight of the evidence, the court will, of necessity, need to supplement the report by referring to a transcript of the testimony. *Zacek* v. *Zacek* (1983), 11 Ohio App. 3d 91, 94, 11 OBR 143, 146, 463 N.E. 2d 391, 396; see, also, *Eash* v. *Eash* (1984), 14 Ohio App. 3d 298, 14 OBR 355, 471 N.E. 2d 174.

In the case before us, the Master provided the trial court with an extensive presentation of the facts on which he based his recommendation. The plaintiffs objected to certain findings of the Master, but they did not base their objections on the "weight of the evidence." The trial court reviewed the report and recommendation of the Master and, based upon the facts set forth by the Master, reached different legal conclusions on certain issues. On this record, we cannot say that the trial court abused its discretion in not reviewing a transcript of the proceedings before the Master.

CSX's third assignment of error is overruled.

### V

All of CSX's assignments of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON and GRADY, JJ., concur.